UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TROY BAKER, <u>et al</u>.,            :
                                      :   NO. 1:03-CV-00881
          Plaintiffs,                 :
                                      :   **OPINION AND ORDER**
                                      :
   v.                                 :
                                      :
                                      :
OFFICER ERIC TAYLOR, <u>et al</u>.,   :
                                      :
          Defendants.                 :

This matter is before the Court on the Defendants',
Officer Eric Taylor (hereinafter "Taylor") and the City of
Hamilton, Ohio's (hereinafter "the City") Motion for Summary
Judgment (doc. 20), the Plaintiffs', Jesse Snader (hereinafter
"Snader") and Troy Baker (hereinafter "Baker) Memorandum Contra to
Defendants' Motion for Summary Judgment (doc. 23), and the
Defendants' Reply Memorandum in Support of the Motion for Summary
Judgment (doc. 25).

**FACTS & PROCEDURAL HISTORY**

Plaintiffs in their Complaint allege that Baker and
the City violated their rights pursuant to 42 U.S.C. § 1983 by
using excessive force thus violating their civil rights under the
Fourth and Fourteenth Amendments (doc. 1).  Plaintiffs also allege
state law claims for assault and battery (<u>Id</u>.).  In addition, it is

alleged that the City maintained a de facto policy, practice or custom of being deliberately indifferent to the Plaintiffs' constitutional rights (Id.).  The Defendants take the position that the arrests were lawful and that excessive force was not used (doc. 20).  Defendants assert that at all times their actions were reasonable and justified given the circumstances and, as such, qualified immunity is applicable to all claims made pursuant to 42 U.S.C. § 1983 (Id.).  Moreover, Defendants aver that no evidence of a policy, practice or custom of violating Plaintiffs' rights existed on the part of the City (Id.).  As to Plaintiffs' state law claims, the Defendants maintain that they cannot be sustained under Ohio law (Id.).  Defendants argue last that Plaintiffs are not entitled to punitive damages (Id.).

The Defendants divide their statement of facts section within their Motion into facts relating to Baker, facts relating to Snader, and facts relating to Taylor (Id.).  The Court finds this an efficient way to recite the facts as well. Accordingly, the Court follows the structure of the Defendants' Motion as it relates to the facts.  It is important to note that the facts surrounding Baker's allegations and those surrounding Snader's are uniquely different having occurred on completely separate occasions.

**TROY BAKER**

Baker spent the entire day of December 15, 2002 drinking and smoking crack cocaine (<u>Id</u>.).  Taylor was patrolling the north end of the City on the same evening (<u>Id</u>.).  Taylor initially observed Baker purchasing drugs from a known drug dealer (<u>Id</u>.).  Baker spotted Taylor and Baker started to walk away (<u>Id</u>.).  Taylor drove his police cruiser near Baker and asked Baker to stop so the two could talk (<u>Id</u>.).  However, Baker continued walking (<u>Id</u>.).  Consequently, Taylor stopped his cruiser and proceeded to exit (<u>Id</u>.).  Baker took off running (<u>Id</u>.).  Taylor told Baker to stop, but Baker kept running (<u>Id</u>.).  Baker ran between two houses and hid in some bushes (<u>Id</u>.).  Taylor approached the opening between the two houses, but could not see Baker hiding in the bushes (<u>Id</u>.).  Baker suddenly emerged from the bushes and rushed towards Taylor in a menacing manner (<u>Id</u>.).

Baker claims his manner was not menacing (<u>Id</u>.).  Taylor told Baker to stop, but Baker continued his approach (<u>Id</u>.).  Consequently, Taylor hit Baker on his upper arm and thigh with his baton (<u>Id</u>.).  Baker asserts that Taylor hit him in the head with the baton (<u>Id</u>.).  Although Baker's head was injured, Taylor maintains this occurred during the ensuing struggle between the two and categorically denies striking Baker in the head (<u>Id</u>.).

-3-

Ultimately, Taylor subdued Baker, handcuffed him, and placed him under arrest (Id.).  Taylor searched Baker and found a crack pipe and a quantity of crack cocaine (Id.).  Taylor maintains that Baker was obviously under the influence of crack cocaine (Id.).  Baker pleaded guilty to possession of cocaine, possession of drug paraphernalia, obstruction of official business, and resisting arrest (Id.).

**JESSE SNADER**

Snader was eighteen years of age on October 26, 2003 (Id.).  At approximately 3:50 A.M. that day, a City police officer on patrol spotted three individuals crossing the street in an area where there had been several cars broken into recently (Id.).  The patrol officer pulled up along side the individuals and asked them who they were, what they were doing, why they were out, and where they were going (Id.).  The patrolling officer asked the individuals for identification (Id.).  Snader could not provide identification (Id.).  When the officer asked for Snader's name, Snader provided a false name, Tom Bellamy, and a false date of birth so as to indicate he was over eighteen years of age (Id.).  The officer decided to briefly detain the individuals to check for any outstanding warrants (Id.).  As the officer was placing the first two individuals in the back seat of his cruiser, Snader took

-4-

off running (Id.).

Officer Schuster (hereinafter "Schuster") chased Snader while Sergeant Allitore secured the two other individuals in the cruiser (Id.).    Schuster called for assistance, Taylor and Officer Kiep (hereinafter "Kiep") were on patrol and responded to Schuster's call for assistance (Id.).  Officer Payne (hereinafter "Payne") also responded to Schuster's call (Id.).

When Kiep and Taylor arrived and got out of their cruiser, Taylor observed Payne and Schuster and heard them say, "[h]e's somewhere in here" (Id.).  Taylor then entered the backyard of a home and heard Payne say, "[l]et me see your hands, let me see your hands" (Id.).  Taylor followed Payne and Kiep in the chase (Id.).  Snader, Kiep, and Payne turned a corner and briefly were out of Taylor's field of vision (Id.).  Payne and Kiep apprehended Snader, with Payne bringing him to the ground (Id.).  Snader continued to struggle, kicking and throwing elbows at Payne and Kiep (Id.).  During this struggle, Taylor told Snader to "stop resisting" (Id.).  However, Snader kept struggling and Taylor struck him once in the right leg with his baton (Id.).  Yet, Snader continued to resist (Id.).  Taylor hit Snader two more times, again in the right leg (Id.).  During the struggle, Snader's arm was underneath him where the officers could not see it (Id.).  Taylor

-5-

believed that Payne and Kiep were at risk of bodily injury because of the struggle (Id.).  Kiep was actually injured during the struggle (Id.).  Taylor along with Schuster were able to handcuff Snader (Id.).  Taylor testified that at no time did he hit Snader in the head or see any of the other officers do so (Id.).

Snader maintains that while he was running from the officers, he yelled, "I'm stopping" and started to slow down and that as he was slowing down his hands were to his side or in front of him (Id.).  Snader further maintains that once the officers caught up with him, one of them hit him in the back of the head with a baton, tackling him to the ground (Id.).  Snader testified at his criminal trial that he could not tell which officer tackled him and that possibly it was Payne who hit him on the head (Id.).  However, unlike his trial testimony, Snader now argues that Taylor hit him on the head (Id.).  Ultimately, Snader was convicted of obstructing official business in a way that created a risk of physical harm to the officers involved and of a curfew violation (Id.).

**OFFICER ERIC TAYLOR**

Taylor has been a police officer with the City for over five years (Id.).  Taylor attended the Ohio Police Officer's Training Academy ("OPOTA") in 1999 (Id.).  At OPOTA, Taylor

-6-

received training in the use of force (<u>Id</u>.).  He also received training on the use of a baton (<u>Id</u>.).  Continuing education is provided by the City Police Department twice a year, including training on the use of force, use of asps, and use of a baton (<u>Id</u>.).

**APPLICABLE LEGAL STANDARD**

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.  <u>Id</u>. at 321; <u>Guarino v. Brookfield Township Trustees</u>, 980 F.2d 399, 405 (6th Cir. 1992); <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989). If the moving party meets this burden, then the non-moving party

"must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" Guarino, 980 F.2d at 405 (quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**ANALYSIS**

Defendants argue that the force used was not

-8-

excessive as a matter of law (Id.).  Citing Graham v. Connor, 490

U.S. 386 (1989), the Defendants note that the reasonableness of the

force used is viewed from the perspective of a reasonable officer

on the scene without the benefit of hindsight and that not every

push or shove, even if it may later seem unnecessary, violates the

Fourth Amendment (doc. 20 citing Graham at 396-97).  Graham states:

> Determining whether the force used to effect a particular
> seizure is "reasonable" under the Fourth Amendment
> requires a careful balancing of " 'the nature and quality
> of the intrusion on the individual's Fourth Amendment
> interests' " against the countervailing governmental
> interests at stake. Id., at 8, 105 S.Ct., at 1699,
> quoting United States v. Place, 462 U.S. 696, 703, 103
> S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). Our Fourth
> Amendment jurisprudence has long recognized that the
> right to make an arrest or investigatory stop necessarily
> carries with it the right to use some degree of physical
> coercion or threat thereof to effect it. See Terry v.
> Ohio, 392 U.S., at 22-27, 88 S.Ct., at 1880-1883.
> Because "[t]he test of reasonableness under the Fourth
> Amendment is not capable of precise definition or
> mechanical application," Bell v. Wolfish, 441 U.S. 520,
> 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however,
> its proper application requires careful attention to the
> facts and circumstances of each particular case,
> including the severity of the crime at issue, whether the
> suspect poses an immediate threat to the safety of the
> officers or others, and whether he is actively resisting
> arrest or attempting to evade arrest by flight. See
> Tennessee v. Garner, 471 U.S., at 8-9, 105 S.Ct., at
> 1699-1700 (the question is "whether the totality of the
> circumstances justifie[s] a particular sort of ... seizure").
> The "reasonableness" of a particular use of force must be
> judged from the perspective of a reasonable officer on
> the scene, rather than with the 20/20 vision of
> hindsight. See Terry v. Ohio, supra, 392 U.S., at 20-22,
> 88 S.Ct., at 1879-1881.

Graham at 396.  The Supreme Court further states:

> With respect to a claim of excessive force, the same
> standard of reasonableness at the moment applies: "Not
> every push or shove, even if it may later seem
> unnecessary in the peace of a judge's chambers," Johnson
> v. Glick, 481 F.2d, at 1033, violates the Fourth
> Amendment. The calculus of reasonableness must embody
> allowance for the fact that police officers are often
> forced to make split-second judgments--in circumstances
> that are tense, uncertain, and rapidly evolving--about
> the amount of force that is necessary in a particular
> situation.   As in other Fourth Amendment contexts,
> however, the "reasonableness" inquiry in an excessive
> force case is an objective one: the question is whether
> the officers' actions are "objectively reasonable" in
> light of the facts and circumstances confronting them,
> without regard to their underlying intent or motivation.
> See Scott v. United States, 436 U.S. 128, 137-139, 98
> S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978); see also
> Terry v. Ohio, supra, 392 U.S., at 21, 88 S.Ct., at 1879
> (in analyzing the reasonableness of a particular search
> or seizure, "it is imperative that the facts be judged
> against an objective standard"). An officer's evil
> intentions will not make a Fourth Amendment violation out
> of an objectively reasonable use of force; nor will an
> officer's good intentions make an objectively
> unreasonable use of force constitutional. See Scott v.
> United States, supra, 436 U.S., at 138, 98 S.Ct., at
> 1723, citing United States v. Robinson, 414 U.S. 218, 94
> S.Ct. 467, 38 L.Ed.2d 427 (1973).

Graham at 396-97.

Defendants note that Snader was convicted of a fifth

degree felony, Obstructing Official Business, which is governed by

Ohio Revised Code § 2921.31 (Id.).  That section states:

> (A) No person, without privilege to do so and with
> purpose to prevent, obstruct, or delay the performance by

-10-

a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

(B) Whoever violates this section is guilty of obstructing official business . . . If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree.

Ohio Rev. Code § 2921.31. As such, argue Defendants, it has already been determined that Snader created a risk of injury to the officers at the time of the incident in question (doc. 20).

With respect to Baker, Defendants highlight that Baker pleaded guilty to possession of cocaine, possession of drug paraphernalia, obstruction of official business, and resisting arrest (Id.). Section 2921.33 of the Ohio Revised Code governs resisting arrest and states: "(A) No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Ohio Rev. Code § 2921.33. Accordingly, aver Defendants, Baker has admitted to resisting arrest recklessly or by force (Id.).

Taylor acknowledges that he struck Baker and Snader on the arms and legs with his asp baton (Id.). However, Taylor avers that these actions do not rise to the level prohibited by Graham (Id.). Accordingly, Taylor urges this Court to dismiss

-11-

Baker and Snader's claims for excessive force and battery as a
matter of law (Id.).  The Court is inclined to do so.  Given the
circumstances of the situations faced by Taylor when Baker and
Snader both resisted arrest, this Court finds as a matter of law
that the force used was reasonable.

Taylor also argues that he is entitled to qualified
immunity (Id.).  Taylor contends that it is not disputed that he
was acting within the scope of his discretionary duties as a law
enforcement officer as to all actions which are the subject of this
litigation (Id.).  Qualified immunity is a long-standing doctrine
that provides officials "immunity from [the indignities of] suit
rather than a mere defense to liability."  Saucier v. Katz, 533
U.S. 194, 200-201 (2001).  In sum, it protects officials from being
held liable for violations of constitutional rights they did not
know existed due to a lack of a previous pronouncement by a court
recognizing the particular right in question.  Under Supreme Court
precedent, determining whether a police officer is entitled to
qualified immunity is a two-step process.  First, the Court must
ascertain whether the officer's alleged conduct violated a
constitutional right.  See Chavez v. Martinez, 538 U.S. 760, 766
(2003); Saucier, 533 U.S. at 201.  In other words, "[t]aken in the
light most favorable to the party asserting the injury, do the

-12-

facts alleged show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201.  If it does not, then the inquiry is at an end: the officer is entitled to qualified immunity from suit.  See Chavez, 538 U.S. at 766; Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").  If, however, the complained-of conduct would violate one or more of the plaintiff's constitutional rights, a second inquiry is required: The Court must ascertain whether the particular right allegedly violated was clearly established at the time the violation occurred.  Saucier, 533 U.S. at 201.  The Supreme Court has, however, circumscribed the scope of the review of this issue:

> This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.

> [W]e emphasized in Anderson "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

-13-

Saucier, 533 U.S. at 201-202 (internal citations omitted); see also Wilson v. Layne, 526 U.S. 603, 615 (1999)("[A]s we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.").

The Court agrees with Taylor that he did not violate a constitutional right of either Baker or Snader.  When the circumstances surrounding the arrest of Baker and Snader are "[t]aken in . . . [a] light most favorable to . . . [them] . . . - [the] facts alleged [do not] show . . . [that Taylor's] conduct violated a constitutional right . . .[.]"  Saucier, 533 U.S. at 201.  The "specific context" of this case is that Baker and Snader both resisted arrest and it would not have been clear to Taylor, a reasonable officer, "that his conduct was unlawful in the situation he confronted."  Saucier at 201-02 (internal citations omitted). Accordingly, Taylor urges this Court to find that he is entitled to qualified immunity thus dismissing Baker and Snader's federal law claims (doc. 20).  The Court is so convinced.

Next, the City argues that Baker and Snader have not adduced evidence of any policy, practice or custom of being deliberately indifferent to their rights (Id.).  This custom or policy complained of by Baker and Snader is a failure on the City's

-14-

part to properly train its officers (Id.). However, Taylor has testified in deposition, at length, as to the training he received prior to becoming an officer (Id.). Additionally, the record is clear that Taylor received on-going training as part of his employment with the City's Police Department (Id.). Baker and Snader have not presented evidence to substantiate their claim of a pattern and practice of ineffective training on the part of the City. As such, the Court finds that all claims against the City are dismissed as a matter of law.

Taylor also avers that he is not liable for the state law claims for assault and battery as a matter of law (doc. 20). Battery is defined under Ohio law as "an intentional, unconsented-to contact with another." See Snyder v. Turk, 627 N.E.2d 1053, 1057 (Ohio Ct. App. 1993). Assault is defined as the beginning of act an which, if consummated, would constitute battery and which causes reasonable fear of immediate physical violence. See Matlock v. Ohio Dep't of Liquor Control, 665 N.E.2d 771, 774 citing Ryan v. Conover, 18 N.E.2d 277 (Ohio Ct. App. 1937). Acts of a police officer which would constitute battery and/or assault are so, unless privileged. See e.g., Love v. City of Port Clinton, 534 N.E.2d 166, 167 (Ohio 1988) citing Restatement (Second) Torts § 118 cmt. b (1965) ("[a]n arrest, whether with or within a

-15-

warrant, usually involves conduct which, unless privileged, is an 'assault' or 'battery'").

In <u>Skinner v. Brooks</u>, 58 N.E.2d 697 (Ohio Ct. App. 1944), the court stated:

> A peace oficer [sic] duly empowered is not liable for injuries inflicted by him in the use of reasonably necessary forces to preserve the peace and maintain order, or to overcome resistance to his authority. Thus an officer making an arrest is justified in using sufficient force to subdue the prisoner although not acting in self defense.

<u>Id</u>. at 698.  <u>Skinner</u> also stated:

> An officer attempting to make a lawful arrest for a misdemeanor is under no obligation to retreat or retire to avoid the necessity of using extreme measures to prevent receiving great bodily injury. It is his duty to press forward for the accomplishment of his purpose.

<u>Id</u>. <u>citing</u> 4. Am. Jur. 54, § 77.  The Court finds that Taylor and the other officers' actions were reasonable in light of the circumstances and as such privileged.  Therefore Defendants are not liable for assault and battery under Ohio law.

For the reasons stated above, the Court hereby GRANTS Defendants' Motion for Summary Judgment (doc. 20).  All federal claims against Defendants are hereby DISMISSED and all state claims DISMISSED WITHOUT PREJUDICE.


SO ORDERED.

Dated: October 5, 2005           /s/ S. Arthur Spiegel

-16-

S. Arthur Spiegel
United States Senior District Judge

-17-